NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MTB INVESTMENT PARTNERS, LP, on behalf of itself and all others similarly situated,<br><br>      Plaintiff,<br><br>     v.<br><br>SIEMENS HEARING INSTRUMENTS, INC.,<br><br>      Defendant. | Civil Action No. 12-cv-00340 (SDW)(MCA)<br><br><br><br><br>OPINION<br><br><br><br><br>February 19, 2013 |

**WIGENTON**, District Judge.

  Before this Court is Defendant Siemens Hearing Instruments Inc.'s motion to dismiss Plaintiff MTB Investment Partners, LP's amended class action complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). This Court, having considered Plaintiff's submission, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, Defendant's motion is **DENIED in part and GRANTED in part**.

I. **BACKGROUND**

  *a.* <u>Parties</u>

  Plaintiff, MTB Investment Partners, LP ("MTB"), is an investment fund whose primary place of business is in New York. (*See* Am. Compl. ¶ 11.) Defendant Siemens Hearing Instruments Inc. ("SHI") is a Delaware corporation with its principal place of business in Piscataway, New Jersey. (*See id.* ¶ 12.) SHI is a manufacturer and seller of hearing aids and other related products purchased by HearUSA. (*See id.* ¶ 3.) HearUSA was a Delaware corporation with its principal place of business in West Palm Beach, Florida. (*See id.* ¶ 2.)

"HearUSA was a national leader in hearing care products and services." (*Id.*) Since at least 2006, SHI was the largest supplier, shareholder, and creditor for HearUSA. (*See id.*) Between January 18, 2011 and July 31, 2011("Class Period"), MTB, as well as other holders of HearUSA common stock, sold HearUSA common stock in reliance on representations made by SHI. (*See* Am. Compl. ¶ 6.) SHI, through its representations, allegedly suppressed the value of HearUSA's common stock, making it so that MTB and other similarly situated entities who sold HearUSA common stock during the Class Period did so at deflated prices. (*See id.* ¶ 6.) SHI then went on to later acquire HearUSA. (*See id.*)

    b. Allegations

The gravamen of this case centers on statements made by SHI, which MTB alleges constituted securities fraud because said statements were intentionally and materially false and/or misleading and, therefore, damaging to MTB and other similarly situated holders of HearUSA common stock. Said statements allegedly permitted SHI to unlawfully suppress HearUSA's publicly-traded common stock prior to SHI's acquisition of HearUSA. (*See* Am. Compl. ¶ 1.) Specifically, MTB alleges that "[s]ince approximately December 7, 2001, SHI and HearUSA were parties to a supply agreement, credit agreement, investor's rights agreement, and securities agreement." (*Id.* ¶ 22.) Pursuant to those agreements, SHI extended HearUSA a line of credit on the condition that HearUSA purchase 90% of its hearing aids from SHI. (*See id.*) On or around December 23, 2008, SHI became HearUSA's largest shareholder by converting $3,840,000 of HearUSA's debt into 6,400,000 shares of HearUSA common stock. (*See id.* ¶ 23.) Consequently, SHI owned between 14.1% and 19.9% of all outstanding shares at HearUSA. (*See id.*)

### i. Project Harmony

MTB alleges that on June 1, 2010, SHI began examining HearUSA's assets for the purpose of acquiring HearUSA through a negotiated buyout process. (Am. Compl. ¶ 26.) HearUSA and SHI referred to the negotiated buyout process as "Project Harmony." (*See id.*) Allegedly, SHI, or its affiliates, hired an independent auditing firm, as well as legal counsel and one or more investment banks to perform due diligence on the possible buyout. (*See id.* ¶ 27.) On July 15, 2010, October 6, 2010, and November 3, 2010, SHI's chief financial officer ("CFO"), Nicolau Gaeta, contacted HearUSA's CFO, Frank Punal, to request additional support and information in an attempt to expedite SHI's due diligence. (*See id.*) MTB alleges that beginning in late September 2010, Kenneth Meyers, the vice president and head of corporate development at Siemens Corporation, "repeatedly told HearUSA's officers and directors that an offer [to acquire] HearUSA was imminent." (*Id.* ¶ 28.) MTB alleges on information and belief that other high-ranking executives at SHI and its affiliates made similar promises. (*See id.*) As a result of these assurances, MTB asserts that HearUSA refrained from discussing important issues with SHI regarding SHI's financial duties to HearUSA. (*See id.*) On December 8, 2010, SHI informed HearUSA that it abandoned Project Harmony because HearUSA was a turnaround company. (Am. Compl. ¶ 29.) MTB alleges that after abandoning Project Harmony, SHI did not represent Project Harmony to the public as a potential negotiated buyout, but instead represented it as an audit to determine HearUSA's compliance with the credit and supply agreements between SHI and HearUSA. (*See id.* ¶ 30.)

### ii. Manipulation of HearUSA's Stock Price

On January 18, 2011, SHI filed a schedule 13D ("January 2011 13D") with the Securities Exchange Commission ("SEC") in compliance with section 13(d) of the Securities Exchange Act

("Exchange Act"). (*See* Am. Compl. ¶ 32.) MTB alleges that at least four of SHI's statements in the January 2011 13D were materially false or misleading. (*See id.*) First, MTB takes issue with SHI's statement that it had "acquired and held [HearUSA] shares since December 23, 2008 without any purpose of, and without the effect of, changing or influencing the control of [HearUSA], and not in connection with or as a participant in any transaction having that purpose or effect, including any transaction subject to Rule 13d-3(b)." (*Id.* ¶ 38.) MTB alleges that this statement was materially false because "SHI was in the advanced stages of a negotiated buyout of HearUSA just one month prior [to its filing of the January 2011 13D.]" (*Id.*) Second, MTB contests SHI's statements: (1) that SHI had not yet decided on the course of action it wished to take regarding HearUSA, (2) that "it had "requested additional information regarding [HearUSA's] financial condition and prospects," and (3) that it was unable to reach a decision until it acquired such information. (*Id.* ¶ 39.) MTB alleges that in actuality SHI already possessed all of the information necessary to make a decision and had already indicated its intention to acquire HearUSA in a bankruptcy sale. (*See id.*) Third, MTB takes issue with SHI's characterization of a December 22, 2010 phone conversation between representatives of SHI and HearUSA in which, according to SHI, HearUSA indicated it "'would be unable to pay the full amount of the trade payables due to [SHI] in December 2010.'" (*Id.* ¶ 40.) MTB alleges that SHI's rendition of the December 22, 2010 phone conversation was materially false and/or misleading because SHI received a letter on January 10, 2011, from David McLachlan, HearUSA's lead independent director, wherein HearUSA disputed its inability to pay the full amount of trade payables. (Am. Compl. ¶ 40.) MTB also alleges that SHI failed to disclose that the amount owed by HearUSA was in dispute. (*See id.*) Last, MTB opposes SHI's statement that if SHI were interested in acquiring HearUSA, it could do so "'on terms that [did] not involve the

4

payment of any material amount of consideration to holders of Common Stock.'" (*Id.*) MTB alleges that SHI's statement was materially false because it "falsely implied that HearUSA['s] common stock was worthless," which SHI knew or should have known that that was not true since "SHI's eventual valuation of HearUSA's common stock [was] consistent with pre-January 18, 2011 market levels . . . . " (*Id.* ¶ 41.)

On March 17, 2011, SHI filed an amended Schedule 13D; however, according to MTB, SHI did not correct any of its previous misstatements or omissions. (*See id.* ¶ 45.) Instead, SHI made another misstatement by representing that it was concerned with the health of HearUSA as a company, without disclosing SHI's contribution to HearUSA's financial health. (*See id.* ¶ 50.)

MTB alleges that as a result of SHI's misrepresentations, the value of HearUSA's common stock dropped by 66% between January 18, 2011 and May 5, 2011. (Am. Compl. ¶ 52.) On August 1, 2011 SHI purchased HearUSA's assets in a section 363 bankruptcy auction. (*See id.* ¶¶ 54-59.) SHI's winning bid was for $129.3 million, which included: (1) cash equaling $66.8 million, (2) credit equaling $30.7 million outstanding from SHI's credit agreement with HearUSA, (3) "the assumption of liabilities and court costs approximating $11.7 million," and (4) the waiver of distribution of SHI's ownership of HearUSA, "which SHI valued at $6 million and $7 million." (*See id.* ¶ 57.) MTB alleges that SHI's valuation of HearUSA's common stock demonstrated SHI's knowledge that HearUSA stock was worth at least between 0.93¢ and $1.09 per share. (*See id.* ¶ 58.) MTB further alleges that this value represents a much higher value than SHI indicated in its January 2011 13D and its amended Schedule 13D. (*See id.*) MTB alleges that when SHI was announced as the winner of the bankruptcy auction, the value of HearUSA common stock jumped approximately 96%, increasing from 0.45¢ per share to 0.88¢ per share. (*See id.* ¶ 59.) By August 5, 2011, the volume of trades in HearUSA common stock

5

reached 9,924,586, which was almost three times the volume of the previous week. (*See id.*) Between August 1, 2011 and November 30, 2011, prices for HearUSA common stock fluctuated between approximately 0.88¢ per share and 0.96¢ per share, which is consistent with SHI's valuation in the bankruptcy auction and the price of HearUSA's common stock before SHI submitted its Schedule 13D filings. (*See id.* ¶ 60.)

## II. PROCEDURAL BACKGROUND

On January 18, 2012, MTB filed a complaint in this Court. (*See* dkt. no. 1.) On January 19, 2012, on behalf of a class consisting of all persons who sold any shares of HearUSA common stock during the Class Period, MTB published a notice regarding the pendency of the class action in *Business Wire*. (*See* Decl. of William P. Butterfield ("Butterfield Decl.") Ex. B.) On June 1, 2012, MTB filed an amended complaint. (*See* dkt. no. 29.) MTB's amended complaint alleges three causes of action: (1) violation of section 10(b) of the Exchange Act and rule 10b-5(a) and (c) promulgated thereunder; (2) violation of section 9(a)(2), as brought under section 9(e) of the Exchange Act; and (3) violation of section 18(a) of the Exchange Act. On July 6, 2012, SHI brought the instant motion.

## III. LEGAL STANDARD

The adequacy of pleadings is governed by Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level. . . . " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket

assertion of an entitlement to relief." (citation omitted)).  In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).  As the Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950 (citation omitted).  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," *id.,* the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

As a general rule, a district court deciding a motion to dismiss may consider only the contents of the pleadings.  *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (internal citation omitted).  However, there exists an exception to that general rule in

that "'[d]ocuments that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim.'" *Cooper v. Samsung Elec. Am., Inc.,* 374 F. App'x 250, 253 n.3 (3d Cir. Mar. 30, 2010) (quoting *Pryor*, 288 F.3d at 560).

Under the heightened pleading instructions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), "any private securities complaint alleging that the defendant made a false or misleading statement must: (1) 'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading,' and (2) 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind[.]'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.* ("*Tellabs I*"), 551 U.S. 308, 321 (2007) (citing 15 U.S.C. § 78u-4(b)(1), (2)).

## IV. DISCUSSION

### a. MTB's Section 10 and 18 Claims

In a securities fraud action, the PSLRA requires a heighted pleading standard for claims brought pursuant to section 10 of the Exchange Act and rule 10b-5. *See Tellabs I*, 551 U.S. at 321. SEC rule 10b-5 states in pertinent part that it shall be unlawful (a) "[t]o employ any device, scheme or artifice to defraud, . . . (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5(a),(c).

To state a claim under section 10b, MTB must allege that SHI "'(1) made a misstatement or an omission of a material fact (2) with scienter (3) in connection with the purchase or the sale of a security (4) upon which [Plaintiffs] reasonably relied and (5) that [Plaintiffs'] reliance was the proximate cause of [their] injury.'" *In re Ikon Office Solutions, Inc.*, 277 F.3d 658, 666 (3d Cir.

2002). The PSLRA requires that the first two elements be pled with particularity. Regarding the first element, the PSLRA specifically states that a complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Regarding the second element, the PSLRA requires that a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* at § 78u-4(b)(2).

"[S]ection 18 [of the Exchange Act] grants a right of action to any person who purchases or sells a security in reliance on a false or misleading statement of a material fact in any application, report or document filed with the SEC pursuant to the Exchange Act." *In re Suprema Specialties, Inc. Sec. Litig.*, 334 F.Supp.2d 637, 654 (D.N.J. 2004), *rev'd in part*, 438 F.3d 256 (3d Cir. 2006). In a claim under section 18, proof of scienter is not needed. *See id.* However, "[a] plaintiff must specifically allege that he actually read a copy of the document filed with the SEC, or relevant parts of the document reported in some other source, and was induced to act upon specific misrepresentations in the document." *Id.*

SHI argues that MTB's claims under sections 10 and 18 of the Exchange Act should be dismissed because MTB fails to allege a misstatement or omission of material fact. Specifically, SHI argues that MTB's amended complaint fails because: (1) section 13(d) of the Exchange Act does not require disclosure of SHI's evaluation of a possible negotiated buyout of HearUSA, (2) MTB's claim that SHI should have more fully disclosed the December 22, 2010 phone conversation lacks merit, (3) MTB fails to plead the falsity of SHI's statement regarding

acquiring HearUSA's assets without material consideration to HearUSA's shareholders, and (4) SHI disclosed the potential for a restructuring transaction. (*See* Def.'s Br. 7-14.)

SHI's first two arguments are misplaced as they address the merits of MTB's assertions as opposed to the specificity with which the allegations are pled. Regarding SHI's third argument, SHI specifically argues in its opening brief that MTB did not plead facts demonstrating the impossibility for SHI to acquire HearUSA without paying material consideration to HearUSA's shareholders. (*See* Def.'s Br. 13.) SHI, however, is incorrect because MTB alleges that in light of SHI's valuation of HearUSA's stock as healthy, it would not have been possible for SHI to enter into such a transaction. (*See* Am. Compl. ¶ 41.) Furthermore, MTB also alleges in its amended complaint that SHI was aware of MTB being awarded an exclusive contract with the American Association of Retired Persons ("AARP"), which strengthened HearUSA's financial outlook. (*See id.* ¶ 25.) This alleged fact lends more credence to MTB's allegation that SHI's statement was misleading. SHI also attacks MTB's allegation regarding SHI's ability to purchase HearUSA's assets because the allegation is made upon information and belief.[1] (*See* Def.'s Br. 13.) Contrary to SHI's argument, however, MTB alleges in its complaint that its belief is based on the amended credit agreement between the parties.[2] Regarding SHI's fourth argument, SHI's position is again misplaced because SHI's argument implies that MTB's allegation concerns SHI's failure to disclose the possibility of SHI purchasing HearUSA through a bankruptcy sale. Instead, MTB alleges that SHI's disclosure of the transaction as a mere possibility is misleading given that SHI had already decided to purchase HearUSA through a bankruptcy sale.

---

[1] The PSLRA requires the complaint state with particularity the facts forming the basis for the alleged belief.
[2] MTB's reliance on "applicable law" if used alone would be insufficient for purposes of the PSLRA; however, MTB's reliance on the amended credit agreement between the parties is sufficiently specific.

SHI's first basis for dismissing MTB's complaint is unavailing. MTB has sufficiently pled that SHI made a material misstatement and omission in violation of sections 10b and 18 of the Exchange Act.

      i. *Scienter*

"'[S]cienter refers to a mental state embracing intent to deceive, manipulate, or defraud.'" *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). In securities fraud actions, "[t]he requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir.1997). In making a determination regarding scienter, courts have to determine "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets the standard." *Tellabs I*, 551 U.S. at 322.

SHI argues that MTB fails to sufficiently plead scienter because: (1) MTB cannot plead scienter based on allegations of collective scienter, (2) the complaint lacks strong circumstantial indications of fraudulent intent, and (3) competing inferences of non-fraudulent intent are more compelling. (*See* Def.'s Br. 16-24.) By arguing that MTB cannot satisfy its pleading requirement for scienter by alleging collective scienter, SHI's argument raises the issue of whether collective scienter is a viable pleading option in a section 10 claim. There is a circuit split on this issue. The Second, Sixth, Seventh, and Ninth Circuits approve the viability of collective scienter. *See, e.g.*, *Teamsters Local 455 Freight Div. Pension Fund v. Dynex* Capital, 531 F.3d 190 (2nd Cir. 2008); *City of Monreo Employees Ret. Sys. v. Bridgestone*, 399 F.3d 651 (6th Cir. 2005); *Makor Issues & Rights, Ltd. v. Tellabs Inc.* ("*Tellabs II*"), 513 F.3d 702 (7th Cir.

2008); *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736 (9th Cir. 2008).  On the other hand, the Fifth and Eleventh Circuits require plaintiffs to plead individual scienter that can be attributed to a corporation.  *See, e.g.*, *Southland Securities Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353 (5th Cir. 2004); *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015 (11th Cir. 2004).  The Third Circuit has not decided on which side of the circuit split it stands.  In *Tellabs II*, the Seventh Circuit stated that there are three routes to allege corporate scienter: (1) apparent authority, (2) respondeat superior, and (3) through an inference based on alleged misconduct that is attributable only to management level corporate officials.  *See Tellabs II*, 513 F.3d at 708, *Rahman v. Kid Brands, INC.*, Civ. No. 11-1624, 2012 WL 762311, * 17 (D.N.J. March 8, 2012).  The Seventh Circuit set forth a model hypothetical that has been used as a standard in subsequent cases for determining the sufficiency of pleadings related to the third approach of alleging corporate scienter:

> [I]t is possible to draw a strong inference of corporate scienter without being able to name the individuals who connected and disseminated the fraud.  Suppose General Motors announced that it had sold one million SUVs in 2006, and the actual number was zero.  There would be a strong inference of corporate scienter, since so dramatic an announcement would have been approved by corporate officials sufficiently knowledgeable about the company to know that the announcement was false.

*Tellabs II*, 513 F.3d at 710.

SHI contends that MTB cannot allege collective scienter since it has not been established as a viable means of pleading scienter in the Third Circuit, thereby requiring MTB to plead individual scienter.  (*See* Def.'s Br. 17-18, Reply Br. 10-13.)  The Third Circuit's silence on the matter neither blatantly precludes nor permits MTB to plead collective scienter.  Nonetheless, the Third Circuit has implied that it may be possible to plead corporate scienter provided the facts pled are similar to those in the *Tellabs II* hypothetical.  *See City of Roseville Employees' Retirement Sys. v. Horizon Lines, Inc.*, 442 Fed. App'x. 672 (3d Cir. 2011).

In *Horizon Lines*, plaintiff retirement fund brought securities fraud claims against a parent and subsidiary shipping company as well as individual defendants, specifically executives and members of management, for alleged price fixing by the shipping company in its shipping business for shipments between the United States and Puerto Rico. *See City of Roseville Employees' Retirement Sys.*, 442 Fed. App'x. at 673. In addressing the defendant's motion to dismiss, the Third Circuit concluded that plaintiff failed to sufficiently plead scienter as to the executives and management; however, the circuit court also considered whether plaintiff could still plead corporate scienter, and whether based on the complaint, plaintiff had done so. *See id.* In considering the possibility of plaintiff being able to plead collective scienter, the Third Circuit considered the approaches in *Bridgestone and Tellabs II* as viable approaches. *See id.* In considering the hypothetical in *Tellabs II*, the Third Circuit concluded that despite the longevity of the price fixing scheme and its effect on plaintiff's business, the facts pled were not comparable to the facts of the hypothetical in *Tellabs II*.[3] *See id.* at 676-77. The Third Circuit's consideration of the hypo in *Tellabs II* suggest that collective scienter may be a viable route to pleading scienter in a §10(b) claim.

Here, MTB alleges that it has sufficiently pled corporate scienter through the three routes outlined in *Tellabs II*. (*See* Pl.'s Br. 19-24.) Regarding respondeat superior and apparent authority, MTB contends that its pleadings are sufficient based on statements made by SHI executives to HearUSA. This Court, however, will examine the sufficiency of MTB's pleadings regarding scienter through the lens of collective scienter.

---

[3] Specifically, the Third Circuit reasoned that the facts pled were insufficient because "it [was] not as though Horizon did no shipping in the Puerto Rico market while claiming that business there was going well." *Id.*

13

The first type of statement with which MTB takes issue are the promises by SHI in late 2010 of an imminent negotiated buyout.  MTB alleges that in 2010, during Project Harmony, SHI, through Nicolau Gaeta, Kenneth Meyers, and Roger Radke, stated that it intended to make an imminent buyout offer to HearUSA.  (*See* Compl. ¶¶ 27-29.)  Since the alleged promises were made by people at SHI who were in executive positions, it is unlikely that the omission of these statements were the result of an innocent careless mistake at the management level based on false information.

The second type of statement with which MTB takes exception is SHI's failure to disclose its plans regarding the restructuring of HearUSA.  According to MTB, SHI had all the information it needed regarding HearUSA's financial condition and prospects to make a decision on the course of action SHI would take regarding HearUSA's restructuring.  (*See* Am. Compl. ¶ 39.)  MTB also alleges that SHI declared in a January 7, 2011 letter that if HearUSA's board of directors cared to pursue a restructuring transaction, SHI was prepared to discuss various options including a bankruptcy purchase.  (*See id.*)  MTB alleges that despite this letter, SHI stated in its January 2011 13D that it had not yet decided its course of action regarding HearUSA and that it had "requested additional information regarding [HearUSA's] financial condition and prospects" in order to make a decision.  (*See id.* ¶ 39 (citing Am. Compl. Ex. A).)  Since the January 7, 2011 letter likely came from a SHI employee in upper management, this Court finds it unlikely that SHI's alleged statement in the January 2011 13D filing regarding a request for information was merely a careless mistake at the management level based on false information.

The third type of statement with which MTB takes exception is the misstatements by SHI concerning the December 22, 2010 phone conversation. To recap, MTB alleges that the January 2011 13D stated that, according to a phone conversation on December 22, 2010, HearUSA would be unable to pay the full amount of the trade payables due to SHI in 2010. (*See* Am. Compl. ¶ 40.) SHI also stated that "[w]hile [HearUSA] declined to agree that any loan payment was due to [SHI] in January 2011 under the Credit Agreement, [HearUSA] indicated that if any amount was due [it] would be unable to pay it." (*See* Am. Compl. ¶ 40 (citing Ex. A).) MTB alleges that SHI's failure to disclose: (1) the context of the phone conversation, (2) that MTB never made such a specific statement, (3) that the amount owed was in dispute, and (4) the letter by David McLachlan, made SHI's characterization of the phone conversation false and misleading. (*See id.*) The letter by David McLachlan is of particular importance because it explained that the phone conversation was between HearUSA's CEO and SHI's CEO and CFO. (*See id.*) In light of those facts, it is unlikely that the omissions alleged by MTB were the result of a careless mistake at the management level based on false information.

The last type of statement with which MTB takes exception is SHI's statement regarding its ability to acquire HearUSA without paying a material amount of consideration to holders of HearUSA common stock. Schedule 13D of the Exchange Act requires in pertinent part that holders of five percent or more of the beneficial shares of a company publicly report plans or proposals by the reporting holder of shares which would result in: (1) "[a]n extraordinary corporate transaction, such as a merger, reorganization, or liquidation, involving the issuer or any of its subsidiaries"; or (2) "[a]ny change in the present board of directors or management of the issuer, including

15

any plans or proposals to change the number or term of directors or to fill any existing vacancies on the board." 17 CFR § 240.13d-101.  However, Section 13(d) does not require disclosure of "preliminary considerations, exploratory work or tentative plans[.]" *Azurite Corp. v. Amster & Co.*, 844 F.Supp. 929, 934 (S.D.N.Y. 1994), *aff'd*, 52 F.3d 15 (2d Cir. 1995).  SHI concedes that preliminary considerations need not be disclosed.  (*See* Def.'s Br. 7-9.)  Accordingly, SHI's statement regarding acquiring HearUSA was unnecessary as it was not required by statute.  MTB alleges that given HearUSA's recent award of an exclusive supplier contract with AARP, whereby HearUSA was going to be the sole supplier of hearing aids to AARP, HearUSA's long term financial outlook was strong.  (*See* Am. Compl. ¶ 42.)  MTB alleges that SHI knew about HearUSA's long-term financial outlook.  Since SHI's statement regarding its ability to acquire HearUSA was unnecessary and SHI knew about HearUSA's positive financial outlook, this Court is unconvinced that SHI's statement was a careless mistake.

SHI also argues that, assuming *arguendo* it is possible to plead collective scienter, the complaint should be dismissed because it does not plead extraordinary facts like those present in the hypothetical in *Tellabs II*.  Regarding Judge Posner's hypothetical, SHI's alleged misstatements are arguably "so dramatic . . . [that they] would have been approved by corporate officials sufficiently knowledgeable about the company to know that the announcement was false." *Tellabs II*, 513 F.3d at 710.  Furthermore, considering the Third Circuit's reasoning in *Horizon* i.e., that Horizon's misstatement was not a complete contradiction of the truth and therefore does not raise an inference of scienter, SHI's misstatements are alleged to be complete contradictions of the truth.[4]  *See Horizon*,

---

[4] MTB alleges that the four statements with which it takes issue were complete contradictions of the truth.  (*See* Compl. ¶¶ 38-41.)

16

442 Fed. App'x at 677 n. 6 ("For example, it is not as though Horizon did *no* shipping in the Puerto Rico market while claiming that business there was going well.") Therefore, MTB's alleged facts do meet the standard enunciated in *Tellabs II*.

SHI does not offer a non-fraudulent reason for its misstatements. Accordingly, SHI fails to provide a competing inference that is more likely than that provided by the facts in MTB's amended complaint. Therefore, when taking into consideration all of MTBs allegations regarding scienter, the facts alleged in the amended complaint give rise to a strong inference of scienter.

  b. *9(a)(2) Claim*

Section 9(a)(2) of the Exchange Act makes it unlawful for any person

> [t]o effect, alone or with 1 or more other persons, a series of transactions in any security registered on a national securities exchange, any security not so registered, or in connection with any security-based swap or security-based swap agreement with respect to such security creating actual or apparent active trading in such security, or raising or depressing the price of such security, for the purpose of inducing the purchase or sale of such security by others.

15 U.S.C. § 78i(a)(2).

SHI argues that MTB's section 9(a)(2) claim should be dismissed because the section is inapplicable to the alleged facts. (*See* Def.'s Br. 28.) Specifically, SHI argues that since the complaint does not allege that SHI conducted any transactions in HearUSA securities during the Class Period, MTB's section 9(a)(2) claim is misplaced. (*See* Def.'s Reply Br. 1-2.) MTB argues that section 9(a)(2) does not require a party to transact in securities i.e. purchase or sell, but instead requires a party to effect a series of transactions i.e., produce or cause. (*See* Pl.'s Br. 33-34.) Case law, however, does not support MTB's contention.

17

In *Foster Wheeler Corp. v. Edelman*, it was stated that "the law in this Circuit is clear that section 9(a) liability must be predicated on a purchase or sale at a price affected by the offending conduct[.]"  Civ. No. 87-4346 (GEB), 1987 WL 61446 * 3 (D.N.J. Dec. 9, 1987)(citing *du Pont v. Wyley*, 61 F.R.D. 615, 630 (D. Del. 1973)).  Given the court's statement in *Edelman*, MTB's section 9(a)(2) claim cannot survive SHI's motion to dismiss.

V. **CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss is **DENIED in part and GRANTED in part**.

s/Susan D. Wigenton, U.S.D.J.

Orig:   Clerk
Cc:     Madeline Cox Arleo, U.S.M.J.
        Parties